Okay, Mr. Schweitzer, you may proceed. Good morning, Your Honors. Brett Schweitzer from the Federal Defenders here for Mr. Hurtt. At this time, I'd like to reserve three minutes for rebuttal, if I may. Okay. Thank you. Police have a tremendous amount of authority and discretion in conducting traffic stops. Any violation will justify a stop, even if the purpose is to indulge a different hunch. Police may command the scene. They may remove and cuff motorists. The one thing that police can't do is prolong the stop to hunt for other crimes when they lack reasonable suspicion. From your submission, Mr. Schweitzer, I use the term Rodriguez moment. You've used that in your brief. What was the Rodriguez moment in this stop? The most readily identifiable moment is at 345, when Officer Gonzalez pauses the DUI investigation to assist Officer Cannon in the car. Let me challenge you on that and ask you a question or two about that very thing, the Rodriguez moment. First, let's leave, just for analytical purposes for a moment, Officer Gonzalez to the side and ask what Officer Cannon is doing. And you can correct me if I'm wrong, because I've watched the tape and tried to figure out when the markers are. And I think others have done this and said, you know, when things have happened. But Officer Cannon does something a little boneheaded and gets into the cab at about 252, it looks like, on the tape. That's correct. And then he starts shining his flashlight around. And that's right after the three minute mark. It's about 310, 313, something like that. His testimony is that when he's looking back there and looking at the bucket and looking at Mr. Hurt and the front passenger seat person, he's watching and seeing and saying to them, show me your hands, keep your hands out, and they're not doing it. And it's the furtive movements and the refusal to obey his command, which prompts him to say something's wrong. And that it's not until almost like 20 seconds, 30 seconds later, half a minute, something like close to, that Officer Gonzalez even stops talking to the driver. So this looking around in the cab is going on for about a half a minute, where Officer Cannon testifies, they're doing stuff that's making me suspect bad things. While Gonzalez is still talking. So why isn't the Rodriguez moment occurring before Officer Gonzalez stops and says, I've got to go up and help my partner. There is a, there are two responses, Your Honor. First, there's a factual error, I think, in your premise. The testimony from Cannon is that there were some, there was some intermittent compliance. They showed hands, it was cold, but he was very specific that he did not deem this to be a safety issue or reach the threshold of a frisk until 433 on the tape, immediately before he exits the car. That is about a minute after Gonzalez stops the DUI. So just factually, there was, he was in the car for sure, in the truck, Cannon was, before. But in terms of picking up reasonable suspicion for a frisk, the testimony is quite clear that comes after. Well, when you say the testimony is quite clear that comes after, he may say, he might hit the point where he says, I'm getting you out of the car at 433. But he never testifies, does he, that I wasn't worried about this, I didn't have any suspicions. I mean, he's got suspicions, and those suspicions are mounting. Is it your legal position that under Rodriguez, it's only when the officer says, now I will frisk, that at that moment, that is the statement by the officer, that is the legally salient moment. Because even if there was suspicion before that, if it wasn't acted on, it wasn't reasonable suspicion. No, Your Honor, we have to, and this is the second point I wanted to make, the issue of when the Rodriguez moment happens is when both officers in this two officer situation are simultaneously off mission. It doesn't have to do when he picks up, we look at that, we look at when he picks up reasonable suspicion, just like we would in any Fourth Amendment case, we identify the moment of seizure, and then we look to what they knew. And the moment, the Rodriguez moment, has to do when both officers are off mission. As soon as Officer Cannon goes in the car, in the truck, he's off mission. There's no dispute about that. Maybe we're having a terminology issue, Mr. Schweitzer, and you can help me with this. When I'm talking about the Rodriguez moment, it's true Rodriguez as a case is about going off mission. But I think about this Rodriguez moment, not as, and maybe this is my bad, not as when are you off mission, but when, I'm thinking of that as a synonym perhaps for reasonable suspicion to do something which is no longer about the traffic stop, but which you can lawfully do. In other words, if the traffic stop were extended, it would be lawful. And I got a question for you about whether it's even extended at that point or not. While Gonzalez is still talking, arguably, it's not extended at all because he's still doing the traffic stop thing. But leave that, again, leave that to the side. If you accept for purposes of the discussion, my definition of what the Rodriguez moment is, which I think is consistent with green, which is the moment at which the police officer can say, I am no longer engaged in a traffic stop, something else is happening now, which I can lawfully pursue. If that's the Rodriguez moment, I put it to you again, is that not possible to occur before the action of the frisk itself? Can't the reasonable suspicion exist independent of the officer pulling somebody out of the car and doing the frisk? Or is the only legally salient moment when the officer acts on the suspicion? Well, Your Honor, I think in theory, you're looking at this objectively, right? So the officer's testimony, it certainly informs that objective analysis. In other words, when we're looking at this record, we're saying, okay, accepting Your Honor's definition for the moment, then you have to look at this record and say, okay, when did reasonable suspicion for a frisk arise? And if you look at the record objectively, I think that still leads, well, it's my position that that still leads to the same conclusion, that it's after the pause in the DUI investigation, because the best evidence we have is what occurred in the car as Cannon testified to. He didn't have a body cam that night, right? So what he testified to and what both officers, in fact, testified to is certainly before anybody got in the car, no safety concerns whatsoever. In fact, Cannon actually said, it was questioned about whether, you know, do you think, would you, was there any reason to frisk him? And he's like, no, absolutely not. So then we have Cannon get in the car or get in the truck and we have, it's a February night, it's two in the morning, it's cold. And he says, he's looking around the truck. He says, oh, show your hands. They show their hands and they, and so even under an objective view of that record, I would, my position would be that that moment does not arise. That's not the, that's not the finding of the district court though. Now you're doing your own fact-finding. It sounds like Mr. Schweitzer. The district court says that, and credits officer Cannon's testimony, that he found their behavior suspicious. He didn't believe that they were putting their hands back in their pocket and around their waistbands and that Mr. Hurt was motioning toward the bucket because his hands were cold because it was February. He believed it was because they were hiding something. And indeed he thought there was a weapon involved. That's what he testified to. And that's what the district court believed. Aren't we bound by that record? No, your honor. Eventually there's no doubt. And we're not challenging that there was adequately grounds for a frisk. That was challenged below, given the district court's fact findings, we're not challenging that on appeal. What you're, what you're asking, I believe is a different question, which is when did that happen? And when you look at the objective record here, and I grant you, you know, it's not, we don't win just because Cannon says, I didn't have reasonable suspicion until 433, which he did, but that has to inform the analysis. That's really the only evidence we have. What we have is a situation where he's in the car. He is, there's compliance. It's not perfect compliance. And the officer said, and the, there's no immediate frisk. There's no, he doesn't pull out. He's in the car for two minutes. Eventually he says, okay, this is getting fishy. So I do think the moment is afterward, but let me circle back your honor. But after, after what he said, the moment's afterward. The moment is after officer Gonzalez is off mission as well. So, but let me circle back to the point of whether that premise is an accurate view of what a Rodriguez moment is. I don't think it is because what we do is, is what we're doing here is what we, the same thing we do in all fourth amendment cases, right? We look at when the seizure occurs and then we freeze the frame and say, okay, at that point, was there reasonable suspicion for the seizure? Rodriguez is no different. So the Rodriguez moment happens when both in this situation, when both officers go off mission, when that happens, we freeze the frame and we say, okay, at that point, did they have reasonable suspicion? And when was that? What was happening at that point? Where was Gonzalez? Where was Cannon at that point? Cannon was in, in the truck searching, looking around. There's, I don't know if the government is seriously disputing that he was, that he was searching the truck. He said he was looking around. He said he wasn't searching. He was looking around. Well, we have, we have the video and then I'll leave it at that. Unless your honors have any questions, but so Cannon's in the truck looking around. Gonzalez is at the back of the truck in the middle of the, of the field sobriety test. When the video doesn't lie, he literally stops his questioning at 333. I think that's the, he goes, he goes quiet. Let's put it that way. He doesn't, he doesn't break off questioning. He's just stops and starts looking, it seems, over at Cannon. Well, what he did, and I think the fairest reading the record is he's, he's asking several questions. He then stops for six seconds, which is, I, I don't think it's too debatable. If you look at the video, it's fairly unnatural. His questions, he's, he's asking about what do you have to drink, this and that, and the other thing. He stops for six seconds and he says, literally, you know what? I think I'm going to go check on my partner. I think I'm going to put you in the back of the, in the back of the truck or in the back of the squad car. So, so that, Judge McKee is what Officer Gonzalez was doing. So, at that point, he's no longer pursuing the DUI. That's where we freeze the frame. Cannon looking around in the truck. Gonzalez, you know, Gonzalez deciding that he's going to go assist Cannon. And then we freeze the frame, Judge Jordan, and we say, okay, is there reasonable suspicion at that moment for another crime? Good. And I'll, I'll, I'll stand corrected because I believe you're right. The way, the way green frames it and calls the Rodriguez moment is the moment that the, the stop is extended. So that's, that's the, that's the correct terminology. I've been, but in, in my mind, what I've been thinking is, the moment for Officer Cannon, when he reaches reasonable suspicion, if it occurs before the Rodriguez moments hits, which is Gonzalez stopping the DUI sobriety test, if that occurs before that happens, then would you agree that that existence of reasonable suspicion, which, which Officer Cannon is entitled to act upon, begins to, it, it, it rinses whatever else happens after that, because if he's got reasonable suspicion to do what he's doing before Officer Gonzalez breaks off, you never have an unlawful extension. Do you follow what I'm trying to ask? I'm, I'm right with you, Judge Jordan, and I agree. The problem is the record. You cannot find that on this record. First of all, setting aside what we've already talked about in terms of the best evidence, what, what Cannon testified to, there's no testimony that, you know, oh, the first, you know, the first putting in of the pockets was 12 seconds in versus there's no testimony about that. He's no, but we have a record of him looking around in the back. I mean, he's in there engaged with those guys for about a half a minute before Officer Gonzalez goes silent. Correct. But we'd have no idea if he has, even though he didn't think he had reasonable suspicion for a frisk, we have no idea if he had, if there was anything to suggest a frisk in those first 30 seconds. Let me follow up on that because looking at the film, it's a word philosophy test. I'm clearly no expert in philosophy tests, but I kept looking for the philosophy test. There was a discussion between Gonzalez and the driver. He later on said that he didn't give him a citation because he realized that he'd been drinking, he smelled the alcohol. He didn't think it was over the limit because he looked at his eyes. Well, that made me, I, it's a weird philosophy test. And what struck me is while Gonzalez is back there talking to the driver, um, he didn't seem to me to be doing anything, which would be consistent with my view of the philosophy test. He's just talking to the guy. He asked him what he had to drink. Shortly after he got him out of the truck, passes the head one drink, walks him back to the, um, squad car. Either while he's walking him back to the squad car, or as soon as he gets into the looking around, uh, in the car, he says it wasn't a search. And the district court accepted that it's credible. I'm not sure legally that what he was doing then did not amount to a search. It seems to me that he did. And I'm trying to find out what, at that point, what's happened with the philosophy test. And now it's hard to figure out what the hell was going on with the philosophy test. A few minutes, a few seconds occur while there's some pushback, not physical pushback, verbal pushback from the driver because he did not want to get into the squad car. It's a willed sobriety test. And it's just, and I can ask the questions of Mr. Newcomer, but it seems to me that it's pretty obvious from looking at this thing that at least Officer Connor was going to, while that sobriety test was going on, he was going to check out these guys, check out his car. He asked the passenger what his name and ID is. That struck me as strange. I don't know why he had to find out who the passenger was and look at the passenger's ID. It just seemed like this whole thing, from the point of time they got the driver out of the car, he said he was drinking, he had a drink. It looked like, boy, this is my lucky day. I'm going to find something on these guys. Your Honor, I think that's essentially what happened. Judge, Officer Cannon gets into the car immediately after handing off, gets into the truck immediately after handing off the driver. And so what we do know, however, is the DUI investigation started. It didn't last long because Officer Cannon got in the truck and Officer Gonzales said, uh-oh, well, it looks like his words, by the way, at the hearing was, looks like something else, something more going on. And I can't, and he testified that he couldn't tell what was going on in the truck. So that's why he breaks it off. So the DUI investigation doesn't last long, but we know it does start. The Officer Gonzales, the officers testified to their MO in DUI investigations. He, without even saying a word, comes around, picks up the driver, takes him to the back of the car, starts asking about alcohol, starts, um, you know, uh, questioning him. And it's, and it's only because Cannon immediately gets into the truck that that is paused. So eventually, once that's, once that's paused, once, once Gonzales decides to put him in a squad car, that DUI is in limbo, that investigation is in limbo. It doesn't come up again until Mr. Hurt is taken from the scene. Okay. Accepting that that's true. Um, what, what is, if anything, the role of, uh, uh, independent unlawful action? I mean, is there, is there a role for the idea of attenuation in a circumstance like this? That, assume for the sake of discussion that this is, uh, after Gonzales had stopped. Okay. Not before, but after Officer Gonzales had paused the DUI thing. He's walking back up to the truck. That, uh, Mr. Fetter leans over and a gun just, and the gun falls out of his waistband. Or Mr. Fetter pulls the gun out and points it at Officer Cannon. Would the assertion be you just can't, that evidence is inadmissible, or would the, or would you conceive that there, there's something independent, it's attenuated, it's far enough removed, uh, that, that, that evidence is in and of itself admissible? Um, your honor, your honor is correct. There's all, when you look at exclusion as opposed to the fourth amendment violation, there's still a fourth amendment violation. When you look at exclusion, there are limiting principles, attenuation and so forth. Um, two, two points that those can come up in cases. They have not come up here. It's the government's burden to both create a record on that and to raise it. And in fact, what happened in this case was the government, you know, there were, there were statements later, right? At the station house, the government argued attenuation and as to those statements after the fact, you know, an hour after the fact or whatever, um, and the district court didn't reach it. The government has, has abandoned even that. When you say they abandon it, do we, can we affirm on any basis supported by the record, whether the government argues it, whether the district court reaches it, are we bound by, by a forfeiture? Normally no, normally no, but yes, when the government has conceded the matter. And I would say to just, here is a waiver and a concession, even as appellee. How did they, how did they knowingly waive the argument that there could be a fourth amendment, there could be an exception to the exclusionary rule by raising it as the one piece of evidence in the district court and not as to any, as to the gun or any other evidence. And then on appeal by abandoning it wholesale, that is, that is a concession. That's a waiver. I cite Stiegel in our brief, um, for that point, uh, that, that Trump's affirming on any basis. I can, I'm happy to provide a letter with other cases if the court would wish. Um, but, but yes, you're, your honor's right in a different case under different facts. Could, could, uh, some intervening clause break. Don't take a different case. Take this case, take this case on these facts and assume we didn't think there was a, a knowing waiver that, that, that attenuation or inevitable discovery or like whatever you want to, I don't even care what label you put on it, but that, uh, you know, we're in, we're in justice land here where he says, you're just asking to parse this. So finally that it's, it, it's a little wacky, but assume that we're, we're going to just accept the way you've framed the, the, uh, the sequence of events and that officer, uh, Cannon has no reasonable suspicion before 433 when the pause hits, but after the pause is hit on the DUI investigation on those facts, if you hadn't, if there weren't a waiver, w is there an argument to be made that once you know, or you reasonably suspect this guy's got a gun, it doesn't matter. The fourth amendment, bad stuff you did. The evidence isn't going to be excludable. Well, right. I think you put the rabbit in the hat, which is once you know that the guys that the suspect that the guy's got the gun and the hypotheticals, you're accepting that that that's not the case, but, but on, in terms of the causation here, it's, it's very straightforward. Again, we freeze the moment, like we do in all fourth amendment analyses and we say, okay, we freeze the moment. There's no reasonable suspicion. And so therefore there is no, that that's, that's the premise of the hypo. There's no, um, justification for Mr. Hurt seizure. And if he's not seized, they don't recover a gun from the, the causation is direct. Um, it is not attenuated in any way. And again, you know, the government hasn't even argued any of this, you know? Okay. So, so, you know, there's no, this, this isn't a situation where, you know, if we were arguing about the station house and post Miranda and things that, that might be borderline. Um, but here, uh, you're seeing, you're, you're acknowledging that if the gun had fallen out of his waistband, that would be one thing. But a reasonable suspicion doesn't, doesn't amount to an attenuation. Have I understood that? I think that's right. And the reasonable, a reasonable suspicion that comes after the violation, we just don't, when the reasonable suspicion is the key, it seems to me. Yeah. We don't look, we don't look beyond the moment of the seizure to justify, um, justify or to, you can, you can look beyond the reasonable, you can look beyond the Rodriguez moment in the hypotheticals. If he pulls the gun out of his waistband, you're looking beyond the moment. And if it falls out of his waistband, you're looking beyond the moment. What you're saying is there's a legal difference. If it's merely a matter of, I don't see the gun, but I've got ample reason to suspect there's a gun that that's legally different in terms of attenuation than seeing the gun. I I'm sorry if I, if I implied that I don't think that's right. Your honor, I think the causation analysis is the same. I think in other, so if he pulled the gun, it wouldn't matter. Wouldn't be attenuated. If they blew it, they blew it because the Rodriguez moment came earlier and Mr. Hurt pulls the gun out and points him. It's still suppressible under your view because that's not attenuated. Yes, your honor. Okay. Look at the facts. I mean, if he pulls out and instead of frisking him in the waist, he pulls it out and it falls. That's not a, I gotcha. And so, and I gotcha. I understand your position. Okay. But let me, if I may, this is the same subject. It does appear that he who's in the car was making furtive movements. In other words, on two or three separate occasions, he turned around towards the back of the vehicle. And this is what officer Cannon was, was observing. And then of course, it turned out that there was a handgun involved and, and the Mr. Hurt in fact, had the possession of the handgun. How does that make Cannon's actions inappropriate or illegal? Because again, we're not challenging that eventually he developed reasonable suspicion for a frisk or that there might be, that might be harmed and dangerous. What makes it illegal is that he, that arose after the seizure, after the Rodriguez moment. So the moment he goes into the truck, Cannon's off mission. And we can't, we're not arguing that, that, you know, we're not to do that. So we absolutely agree. And we gladly shouldered the burden that we have to show that the officer Gonzalez was off mission as well. That's when Hurt's detention becomes extended. So, but once Cannon, you know, goes into that truck, that's, you know, despite some sort of skirmishes in the briefing, that's a fourth amendment search. There's no doubt about that. He's, he's off the grid in terms of the constitution. And so he's, he's off mission. If he's off mission, but you said you don't have standing to challenge his actions in so far as the search of the truck. And if at that point, Gonzalez is still on mission, does it matter if Connor's off mission at that point? If, if the sobriety check is still going on. So, so I'm not quite sure if I get your, your, your, your, if say, for instance, Cannon discovered something the second he looked into, you know, right after he went into the truck while, while Gonzalez was hadn't paused before Gonzalez. No issues. That comes in. There's no problem there. It comes in. Right. Yeah. That's not a problem. So we have to show both are off mission and that occurs at three 45. And that's before there's reasonable suspicion. And so when you say that's before reasonable suspicion, talk about putting the rabbit in the hat. That's your assertion about what the record shows, because your position is reasonable suspicion doesn't exist until he actually affects the frisk, right? Well, that is the position you've taken here, right? That's the position, but it's not just me, judge Jordan. You know, the government has not, nobody's argued this. Nobody has argued that there was reasonable suspicion at the moment, at that moment of the robbery gets stopped. Well, the district court judge said, and I quote, despite contentions, otherwise evidence shows that neither the traffic stop nor the DUI investigation had ended when officer Cannon search hurt. So at least the district court thought there wasn't enough of a pause and maybe the district court logically could have thought the reasonable suspicion was mounting before there was a frisk. I mean, we can, we can, we're asked to look at the record and we're asked to view the film and we can see him looking around in the back and we can read his testimonies about what they're doing and what it's meaning to him. And that appears on the record on the tape to be happening before officer Gonzalez goes silent. I under the car, he's engaged with them in the back with Mr. Hurt in the back seat while the questioning is going on. Your honor, with respect, I think that that takes a lot of gymnastics. And because what, what happened here, first of all, no one, no one has, has, has tried to move that move that move that suspicion back. No one's argued that. And what the district court actually did, you know, granted you can read the opinion is no one, no one has that perfect clarity, but the opinion basically suggests that, well, because the DUI was open because the traffic was open, that wasn't resolved. And it was ongoing. The government sort of repeats that argument. That's, that's, I mean, that's that can be dismissed out of hand. That's not the past. Is there a, as a legal matter, does the fact that officer safety kicks in mean that he's off mission? Because the unstated premise of your argument is the officer Gonzalez is not on mission and does not lawfully have a right to go check and see whether his companion is safe, consistent with the DUI investigation. In other words, you seem to conflate what's happening with officer Cannon and officer Gonzalez, to the extent that your argument depends upon you're saying Cannon was off mission. And therefore Gonzalez was off mission when an officer safety issue arises that he responds to. Correct your honor. And let me give you my record basis for that. What we have, we know what the would have looked like had the general circumstances, the ratio, the hour, the neighborhood, the everything else, we, we know what the tape would have looked like had those motivated the safety concern. They would have, they wouldn't have started the DUI. They would have gone up to the car. They would have seen the situation. They would have called for backup. And you know what, if the thought takes 30 minutes at that point, that's fine. Because then we know a safe, the safety pause is in service of the lawful mission here. And we have to take the case as we had it under the facts. And here, what we have is full steam ahead until Cannon gets in the truck. No, no, it's not until Cannon gets in the truck. That's, that's where I guess we're just watching a different tape. He's still talking to the man. He's conversing with the driver that goes on for some period of time after Cannon's in the truck. It's only, it's well into Officer Cannon. I'll repeat. I don't think anybody's arguing to the contrary. I don't know. Maybe Mr. Newcomer is. But Officer Cannon shouldn't have been in the truck, but he was. He was. But he's in that truck doing what he's doing while Officer Gonzalez is carrying on his DUI conversation. The sobriety, fuel sobriety test is happening. And it's not until well into that, by something like a half a minute or so, that he's, he stops. And even at that point, you can't say it's stopped. He just is not talking for a few seconds. And then maybe 40 seconds in, he says, I'm going to go check on my partner. I'm going to need to put you in the back seat of my car. Or words to that effect. Your, your argument is, when that happens, he's off mission. And my question to you is, do you have authority for the assertion that checking on officer, a fellow officer's safety is off mission? That the DUI investigation, as far as Gonzalez is concerned, could not still be considered to be ongoing. So I have, I'll give you a legal authority, but the rest of it is factual. And I must take, I must disagree with your characterization of tape. So let me get to that too, if I may. But on the legal point, no question, government hasn't challenged this, at least not to date. And it comes right from Rodriguez, repeated by this court in Clark and in Green, that not all safety counts, right? So safety in service of the lawful mission is part of the mission. Safety that is in service of an off-mission detour does not count. Okay. You're basically saying they can't create an exigency, which would normally give rise to a recent assertion and then rely upon the exigency, which you created to say, well, there was an exigency. I went ahead. It's like the situation, I guess, when it keeps coming to mind with plain view in the case where the officer has listed serial numbers of video equipment, goes to the apartment, sees, and I guess an amplifier that matches the description of something that was stolen in the burglary, but he can't tell from looking at it, whether or not it's stolen, turns it around and sees the serial number and sees it because, ah, it's plain view. It's plain view because you turned it around. Yeah, that's right, Your Honor. And in this context, the way to look at it is, there can't be a pass for really dangerous detours, right? You know, one officer's detouring, but it's really dangerous. So, you know, there's a constitutional pass because safety comes in. Obviously, that's not the law. But let me get back to the factual point, Judge Jordan. So what we have to do is we have to look at the record objectively. We don't look at the subjective, you know, the subjective, you know, views of the officers can inform the objective analysis, but you have to look at the objective reality. And I would humbly submit that when you look at this record and you look at DUI investigation underway and the pause in the DUI investigation happening, while to all, everything we can judge from the body camera is that Gonzalez is essentially staring at Cannon. He also testifies at the hearing, I couldn't really see what was going on in the car. My partner's in there in the car with two other people, blah, blah, blah. You know, we have to say that Cannon being in the car was the triggering event for the pause in the DUI investigation. Did it happen in the first two seconds? No. I'll grant you that. Maybe it took 15 seconds until he finished his questions, finished the frisk. We won't even get into that. You know, we don't have to go there here. But when he takes him back to the car, he had, you know, it's a fluid situation. He can't be expected. We can't say, oh, because he didn't stop the DUI in the first seven seconds, that somehow, oh, it was related to the DUI, the safety. That's not reason why I would suggest it. Okay. I got you. Yeah, we've got quite a while. Judge Fuentes, do you have any questions? Because we'll hear from Mr. Schweitzer again on rebuttal. No, no, thank you. Okay, why don't you take about a three or four minute break, Mr. Newcomer, before we get to you. Give me a chance to run to the restroom. No problem, Your Honor. Okay, right back. Thank you. The court stands in recess. Okay, thank you. Waiting for Mr. Schweitzer to come back. Mr. Newsome, are you in a relationship to Clarence Newcomer, are you? No, I'm not aware of, Your Honor. Although, we're both from Lancaster, originally. Then you were right. Everybody in Lancaster is his second cousins. Newcomer is a more common name in Lancaster, I think, than anywhere else in the world. Because we're all second cousins. Do we have Judge Fuentes? Thank you, Judge Schweritzer. You're here? Okay. Yeah, we're discussing the logistics of Lancaster. Okay, Mr. Schweitzer, go ahead. May it please the court, Your Honor, that this is Matt Newcomer, with the United States government? Can I stop? I'm sorry. Without Mr. Schweitzer's camera on, and I'm not sure he's here. There he is. Oh, yeah. Oh, okay. Yeah, I didn't catch that. Thanks. May I proceed, Your Honor? Sure. Thank you. So, I definitely think we're in agreement in terms of the definition of Rodriguez moment. It requires, as Mr. Schweitzer said, it requires both officers to be simultaneously off mission. So, I think the focus here is appropriately on Officer Gonzalez, which is a clearer path to him being on mission the entire time. He starts a DUI investigation about a minute into it, a minute and a half into it, he pauses it to check on the safety of his partner. Now, we know the safety precaution itself, that's an acceptable part of any traffic stop, any roadside detention. Wait, like stop right there, Mr. Newcomer. Is that your best argument? Because that runs you right up against Judge McKee's assertion and Mr. Schweitzer's argument that you don't get to create your own safety problem and then say I had a safety problem. Well, Judge, you're asking respectfully. I don't think that's the record shows here. I don't think that the, I don't think the record shows that the safety problem was created by Officer Cannon being on duty. If he'd stayed outside the truck, we'd be having a very different argument, very different argument. No one's calling for backup and nobody's putting anybody in a squad car in handcuffs when they first arrived. So, it sort of stretches credibility and credulity to argue that it was the general atmosphere that was what caused Officer Gonzalez to stop talking, cuff the driver and put him in a squad car. It was the fact, and he testified to it, it was the fact that his partner was in the cab with the other people. So, how, I'm not sure why you're taking this path because that does seem to run you smack into, I created a problem, now I get to point to the problem as the basis for what I did. Well, Judge, I don't think that the record shows that Officer Gonzalez was motivated to go help his partner entirely because Officer Cannon was in the vehicle. Well, why else would he, it's kind of what he said, why else would he, he turns around, he sees Connor in the car and Connor says, well, he got in the car to look around and to engage with the occupants, something like that. I don't remember the exact language, but he clearly said, it wasn't search, he got in to look around, which I don't know where he was at the academy when they taught him suppression area 101. He goes in to look around and it was that situation, which then very justifiably, I might add, raises a concern in Gonzalez's mind, well, wait, my partner's back there, he's in a car with two guys, we don't know what's in that car, I gotta go cover him. I'll quote you, he says, I'm thinking, you know, my partner's over there with two unknown persons in this vehicle and I'm thinking to myself, I want to get over there. May I ask, we're not guessing, Officer Gonzalez swore to this, that's what motivated him. I respectfully disagree on that, Your Honor, I think what he was saying was that- I just read it to you. Your Honor, I think there's a different way to interpret that and I think it's a straightforward way. What he was saying was, my officer's over there with two guys in the car. That's what he said. My officer's over there in the car with two guys. My point is that the record isn't clear that he was motivated solely to check on Officer Cannon because he was inside the car, but let's assume- Let's assume, for the sake of argument, we didn't think that was a great argument, okay? No, Your Honor. Where do you go next? So let's assume that, you know, I do invite, yeah, Your Honor, to go back and look at the video because the idea that he turns to look at Officer Cannon for six seconds, it's just not on the video. The video is stationary. It's looking right at the driver and you can see Officer Cannon in the background. It doesn't turn to look at Officer Cannon and turn back to resume. There's no indication, but putting that aside, let's say the concern arose from Officer Cannon being inside the vehicle. At that point, Officer Gonzalez doesn't know if he has a legitimate or non-legitimate reason for being in the vehicle. So the test that Mr. Schweitzer wants to impose means that a legitimate safety concern, a completely legitimate safety precaution, can be tainted or invalidated because if it turns out that he checks on him and he was off mission, then the entire thing is tainted. I don't think that can be the test because it puts the officer in a really difficult spot of having to determine in real time, gee, is my office, my fellow partner, is he in trouble enough that it's worth me going over there to check on him to risk losing my mission? Gee, I'm not really sure. At that point, what was he doing to complete his mission? That's what blows my mind. It would have been a better case had, I don't know if Mr. Schweitzer wasn't the trial attorney, but had the trial attorney, the defense counsel, put on expert evidence from a police officer who trains in this area, what constitutes a full sobriety test? When you were a patrol officer and did a full sobriety test, what were you doing to determine whether or not somebody was really the influence? That's not on the record. But still, this is one, weird ass full sobriety test. He talks to the guy, ask him why he had the drink. That is the full sobriety test, but that interchange, that interaction stops because of a concern. I said before, it's justifiable that Connor is maybe in some jeopardy because he's crawled into the car with these guys. He goes over to check. It does seem like, if we follow your argument, we have a situation where the Fourth Amendment stops because an exigency is created, not necessarily an exigency which arises from a legitimate Fourth Amendment concern, but an exigency is created. Here, it's a safety concern. Therefore, based upon the exigency, you get to do an end run around the Fourth Amendment. It looks like that's what we're dealing with. I don't think so, Your Honor, because if the concern is the fact that Officer Cannon was inside the vehicle, had something been seized while he was inside the vehicle, there was, before we admit there was no probable cause for him to search the vehicle, there was an avenue to pursue a Fourth Amendment violation there. It's a suppression motion to suppress whatever was recovered from inside the truck. That's not the facts here. But Schweitzer can't pursue that. Mr. Hurd can't pursue that because he doesn't have an ownership interest in the car. He doesn't have standing to go that route. The only thing left to him, it seems to me, if he had standing to raise the argument that this is Pennsylvania law and Pennsylvania Supreme Court decisions, then it's easy because then he would have standing to raise the issue of Connors going into that car without justifiable cause, a reasonable suspicion. But we're not in that land. We're in the land of Hurd's, not the owner of the car, not the driver of the car. He's in the truck, in the truck with a gun, so we have to kind of go from there. But one piece here, just to back up a minute, in terms of the field sobriety test, I mean, there was a decent amount of testimony in the record near the end of the transcript having to do with the time it takes to do a field sobriety test, what the steps are. The facts here are Officer Gonzalez escorts the driver to the back of the vehicle and for a minute gives us preliminary questions, where you're going, how much you've been drinking. The testimony- He asks him that at the back of the truck. That's before he gets to the car. At the back of the truck, he asks him that. Correct. Correct, Your Honor. And those questions are a lead-up to the actual field sobriety test, which I think there's testimony in this include an eye check, walking the line, not all of which Officer Gonzalez ultimately did, but he was- the questions at the beginning of the back of the truck, those are just a lead-up to the actual field sobriety test. It's about 60 seconds of preliminary questions, hey, where are you going, how much you had to drink. He hadn't actually started the field sobriety test yet, and that's the extent of that point. I mean, why would you concede that that's not part of the sobriety test? I mean, can't you make the assertion that seeing whether somebody can converse and whether their speech is slurred and whether they can carry on an ordinary discussion is part of the sobriety test? I'm not sure why you're laying that on the table, but even assuming everything Judge McKee said was right, which is this was a wacky sobriety test, nobody, even the defendant, I don't think, is arguing here that there wasn't a DUI, a valid DUI sobriety test going on. So the real question is, you know, do we accept your argument, which is you can separate these two officers and a legitimate safety concern on the part of one stands completely independent of the bad actions of the other? Because just take it for the sake of discussion that we all thought Officer Kan might be a fine police officer, but he made an error in judgment that put all this in motion, so we're spending all this time talking about it because he got in a truck when he should not have. And everything might have unfolded exactly the same if he'd kept his body out of the thing and just shown his flashlight and talked to the people, but that's not the world we're in. He chooses to get in, and your argument is that has no bearing on this. It doesn't matter that Officer Kan does something that's clearly violative of the Fourth Amendment because Officer Gonzalez is an independent actor. And I hear Mr. Schweitzer's argument being you can't treat it that way, otherwise you incent, now I'm putting words in his mouth, but the assertion seems to be you're you go do this, and then I can have a safety concern and come save the day, and we're still going to be okay. That's sort of the competing argument we're having here because of the way you're framing your argument, and that's why I'm wondering why you're framing the argument the way you are. On that piece, Your Honor, and I think I misspoke, I didn't mean to say that the questioning wasn't related to the DUI investigation. My point was that there are actual steps to a DUI test, and he hadn't gotten to those steps yet. He was just part of the overall investigation, asking background questions before he got to the actual test. So our mission is my point on that. But if that's the case, if he hadn't really gotten to the actual test yet and he stops, that seems to move the pendulum in terms of when the Rodriguez moment happened substantially forward because I was looking at it in terms of he's having the sobriety test, and he breaks it off, and at that point, the snapshot that Mr. Schultz talks about, what does that look like? But you're saying, well, we're not even there. He hadn't really started the actual child sobriety test yet, and he broke off actually starting it. He deferred having this sobriety test to go check on what Connor was doing. That to me, in front of the government, is more problematic. I think I'm not presenting this clearly. So the test doesn't have to do with whether he actually started a DUI test. It was a DUI investigation. So now he's entitled to perform a DUI investigation. Once that might be the test, he hasn't quite gotten there yet. He smells alcohol. He's not quite sure. The guy admits to having a drink. So he starts asking, is he swearing? Is he answering my questions? Is he being direct with me? Just preliminary questions before he actually decides to do the test. But that's all part of the lawful on-mission DUI investigation. To Judge Jordan's point, though, starting with Rodrigo's and going forward, all of the case law on this issue, it bakes into the fact pattern that one officer is off-mission. And so long as the other officer remains on-mission, then the off-label question, if you're asking about the United States versus, I believe it's Clark, and I think you were on this panel, involved an officer returning to the car after the DUI stop was over and asking about criminal history. Well, clearly there, there's no basis for the criminal history, right? Entirely pretextual at that point, not safety related. But baked into those decisions is that when you have one officer off-label and one off-mission and one officer on-mission, so long as the on-mission officer is pursuing his mission, it doesn't create a Rodriguez problem. It might create a completely different problem, a completely different fourth amendment problem, and there's remedies for that, but it doesn't create a Rodriguez problem because the stop is not unlawfully extended unless both of them are off-mission. Okay. Now, I understand that argument that you're making. What if we asked the question, you heard the extended dialogue I had with Mr. Schweitzer, and he's a pro, he was paring me at every step, but I would like you to engage in that same analysis with me, two points. First, does the record support an argument that even accepting Mr. Schweitzer's view of the world, that the one officer's behavior taints the other, they go down together. Even accepting that, Officer Gonzalez doesn't stop what he's doing until there's already a that's the first question. And the second question is, if that weren't true, is there a place for attenuation here as a point of decision, or have you waived that completely? So, Your Honor, on the first point, I think that is a valid argument, and Mr. Schweitzer's right, we didn't specifically make the argument that perhaps the reasonable suspicion was developed at some earlier point while Officer Cannon was in the car before Officer Gonzalez went off mission. And the record shows, I mean, from the very beginning, he's flashing his light back and forth. The testimony is, from the very beginning, they weren't listening to his directives to keep their hands visible. He thought that the one passenger in the front seat was trying to distract him from speaking to Mr. Hurt. And that evidence is fully supported by the record, and if you look at it in a light more speakable to the government, you know, the standard for the motion to suppress, I do think there's enough to get you there, factually. On the attenuation piece, Your Honor, and Mr. Schweitzer, again, is correct, we did not specifically make that argument. Yeah, but he's saying it's worse than that. He's saying you waived it. That's what I'm asking. Yeah, I agree with Your Honor, and I'll defer to the law, but my understanding of the law is that as long as there's a reasonable factual basis to come to legal conclusion, you can find a different way to resolve the case. Now, not if you waived it. I'm trying to get you engaged with his, he says you chose to make an attenuation argument with respect to the statements at the station house, so you know how to make an attenuation argument. You chose not to make it as to this other, and that should constitute a waiver. I'm trying to get you engaged on that point. Yeah, I don't think that constitutes a waiver, Your Honor. We didn't affirmably waive anything. The only waiver argument that Mr. Schweitzer is making is he made, he argued in his response brief that we're not making the argument, and we didn't, or in his reply brief, we didn't file a civil reply and say he's wrong, you know, that argument's still out there. Frankly, Your Honor, I'm not sure exactly how the attenuation argument works here. I just haven't thought about it. I'm not fluent enough with the law to be able to sort of spar with you on the attenuation piece, but, you know, I will say that if there's an attenuation argument there, you know, we can submit a post-argument letter on it and brief the issue, and I'm happy to engage on it. Okay. Anything further? It went so quiet, I thought everybody froze. No, I mean, I am curious about this, but I'll take up whether we want 28-J separately with you and Judge Fuentes after we've concluded argument. Okay. I would like to get a transcription. Go ahead. You know, I do think it does come down to the end of the day, you know, evaluating the safety of the officers here, and a lot of this case law, I think, is trying not to parse the reasonable safety precautions an officer takes. That's why there's that exception in there to begin with, because you don't want to have to be in a situation where you're having to second-guess an officer's decision about whether he's going to help his family. That's true, and I think, I mean, and I've said it many times in opinions, and I've said it publicly many times, I mean, I could not imagine a police officer doing a traffic stop, and I mentioned a conversation I had with one of my daughters when we were driving down the street, and there's a traffic stop, because the officer never, never knows. When you pull that car over, you never know what you're dealing with. You might be dealing with somebody who's late to dinner. You might be dealing with somebody who's got no standing homicide warrant. You don't know. It's very dangerous, and the law allows for that, but it seems to me that we get into a situation where legitimate safety concerns can give rise to the kind of exception that you're arguing, the Fourth Amendment precautions, the exception we'd have to rule, because any pair of police officers worth their salt, if they keep up with the law, can get around that. In this situation, Officer Gonzalez goes over. Let's assume that there's an equally valid sobriety test that takes 15 minutes, and there's one that takes five minutes, and he knows that if I give this guy the five-minute sobriety test, we don't really have time to check anybody out, but if I give him the 15-minute sobriety test, my partner's got time to really get over there, check out the car, and I legitimately are going to cover for him, so I'm going to break off my sobriety test and go cover for him, so I'm going to give this guy the 15-minute sobriety test, and lo and behold, 12 minutes into the sobriety test, he turns around, and there's Connor looking around inside the car, shining his flashlight, and he goes, ah, I've got to break off my sobriety test here. I put my 12 minutes into my 15-minute sobriety test. I'm concerned about my partner. I've got to go cover him. We can't allow a situation like that to be created, even though there is a legitimate concern for one officer's safety on the part of the other, and you're making this seem like a very, very horrible dilemma that the police officers have. The police officer's decision is going to be, I'm going to cover my buddy, and if that means that we cover something and get a conviction that doesn't stick, we get a conviction that doesn't stick, but it's more important to me that I get my buddies back than I worry about the fine points of a case called Rodriguez and Mims and Green and Clark and all these other esoteric things. I don't give a shit about that right now. I got my buddy's life on the line. It's not in the real world I wouldn't imagine that it's that much of a heavy-duty intellectual balancing conflict that you're trying to make it out, and the individual police officer, I can't imagine he thinks that way or she thinks that way. That might be the case, too, but I think here, I mean, the hypothetical you laid out is not the facts we have here. The facts here is he went to check on his partner three minutes ago. The cases we write, they go beyond, even we're at a point now, even our NPOs seem to be relied upon as president by lawyers, so whatever we write in this case is going to be applied to other situations, and it's going to come up in the case where there's the 15-minute traffic stop as opposed to the five-minute traffic stop. It's not a line we can draw. But the shield for that, what prevents that from happening are the built-in parameters of the safety precaution. It has to be not pretextual, right? It has to be actually real. It can't be a fake safety precaution, and it has to be reasonable on its own, right? That's what the USB gun or the earlier third circuit went into was trying to assess how long is reasonable for a safety precaution. At some point, does it become pretextual? At some point, does it become unreasonable? In that case, it held 10 to 15 minutes delay for an officer to call for backup when he was concerned about his safety because it was getting dark and because he was smaller than the suspect. The court held that was negligently burdensome on that record. We know here, if the 10 to 15-minute standard was okay in Garner, here we're talking about the two minutes it took for Officer Gonzalez to go check on his partner to make sure he was okay. I think these facts are strong enough to be limited on their own facts. I think this is a case where it's important to come down on the side of not second-guessing an undisputably legitimate safety concern that one officer had. Okay. Even though the safety concern was one that was created by the officer himself? If that's the premise you're on, again, I disagree with that premise. Unbeknownst to the Officer Gonzalez, even if the safety concern was caused by one officer going off mission. Because it's not the officer himself in our case, it's the other officer that creates the problem, right? Right. Correct. The Officer Gonzalez, he didn't create any problem. He was continuing with his duties. Had Officer Cannon not been off mission, nobody would be here arguing anything. Otherwise, he went to check on his partner. No big deal. That's what happens all the time out in the field. And that doesn't add time to stop it. Because the reason why he was doing it, if the premise is he was off mission, if Cannon was off mission, I don't think that that creates a taint on the safety precaution exception. All the reasons that I've discussed. I just think, Mr. Newcomer, that the time of day, which is apparently very, very late, and the place where this occurred have an effect on our decision. One way or the other. The time of day, it was very late. It was, as I understand it, in a very isolated place. I do think that plays into it. And that was sort of one of my opening arguments. You can't say on this record that the only reason that Officer Gonzalez went to check on Officer Cannon was because he was in the car. There's lots of other attenuating circumstances. I'll give you, it's obviously he knew he was in there. He testified he knew he was in there. He saw him in the car. I don't agree with the narrative that the only reason he went to check on him was because he was in the car. I think he would have checked on him regardless. But certainly, when you consider the fact that times of day, the high crime area known for gun violence. And let's not forget, one of the passengers in that car was visibly intoxicated, admittedly intoxicated. So you have a situation two in the morning, two people, one officer's outnumbered. One of the guys is really drunk. And one officer just wants to step over to make sure that his partner's okay before continuing. I think that's entirely reasonable under these facts. Okay. I don't know how the drunk thing cuts one way or the other. Someone who's that intoxicated is not going to have the world champion eye-hand coordination to do anything. So I'm just not sure that cuts one way or the other. I just don't know what the relevant consideration. One thing that really struck me, and it's not really part of this case necessarily, because the officer didn't rely upon it, was the fact that Officer Connors seemed to be partly suspicious because these guys were nervous. And I read that. I can't tell you how many special hearings in common police court where part of what led into the probable cause was the fact that the officer approaches the fellow on the street and the guy's nervous. And that's neither here nor there, but it troubles me whenever I see that playing into the mind of a police officer, this guy's nervous. But again, that's neither here nor there. Judge McKeon, I read the same testimony. Obviously, that was part of the record. I think from the overall explanation Officer Cannon gave, that was not his primary reason. It was actually the deferred movements. No, I agree. Yeah. Certainly, that was on the record that one of the reasons was the nervousness. Right. And who wouldn't be nervous? Black guys in North Philly at two in the morning being pulled over by two police officers, they'd better be nervous. My God. If they weren't nervous, that would be very, very suspicious. Okay. Mr. Swenty, we still have some time, I think. Sure, yes. Thank you, Judge McKee. Judge Swenty, if I could just pick up on your question there. The late hour, the other circumstances, the issue here is not, as Mr. Newcomer has framed it, is the only reason that he stopped the DUI because he was in the car. That's not the issue. The issue instead is, was that the tipping, was that the causal factor, was that the tipping factor? And clearly it was. These officers knew everything. Late hour, suspect ratio, area, high crime, whatever you want to throw in there, they knew it. They were at the car for two minutes, they saw the whole situation, and they proceeded with the DUI. There was no issue until the added factor comes along. So we're not arguing that you can't look at any of that stuff. We're looking at the record here, and the record is inescapable. Engage Mr. Schweitzer, if you would, head on with the argument Mr. Newcomer has made that, okay, give you all that. It is not good policy and not making a knucklehead move taints the behavior of the other officer, that it is entirely reasonable. In fact, it would have been derelict for the other officer not having thought, there's a safety problem now, not to go over and check, and that that's something we don't want to disincent. The short answer, Your Honor, is it's not up for debate anymore. Rodriguez says an off, safety in service of an off-mission detour does not count. Well, it's not. Now you're, now you're, I mean, I think Mr. Newcomer would say you're, you're continuing to conflate the two officers, and you're not supposed to do that. It may be that Officer Cannon is clearly off mission at that point, but Officer Gonzalez isn't off mission. He's still doing his DUI work, and then he has a safety concern which is consistent with his mission. It's not inconsistent with the DUI investigation to have a safety concern for your fellow officer, so you're not off mission even if your colleague is, and the fact that your colleague is and that that's what prompted you doesn't convert your behavior into off-mission behavior. That's the thing I think you're saying and what I'm trying to get you to address. Yes, and the issue is factual, and the issue, that goes to the what was the cause of him doing, of him pausing the investigation. If we all agree that, but if you're, if I may just, if we all agree that the triggering factor is that Cannon was in the car, in the truck, and we all agree that's off mission, then the issue is his pause then isn't because it's not caused by the DUI mission or the circumstances or anything else. It's caused, then you don't have to go any further because I take your argument. Your argument is you can't separate them. No matter what, no matter how pure of heart Officer Gonzalez is, because of Cannon's behavior, he's off mission the moment he does anything to stop the DUI and assist Cannon. That's the legal position. Cannon could be Mother Teresa, and it doesn't matter. His motivations evaporate. It's all about Cannon, period. That has to be your position, and that's the position you're taking, right? It is the position, but let me put a soft glove on it, Your Honor, because I don't think Your Honor said, oh he made a knucklehead move. Kind of like, oh, this is a trip up and then boom, there goes the validity of the stop. We have to take a step back here. Rodriguez is a counterweight to Ratner, and officers, and I agree with your point, Judge McKee, I sympathize with officers. I sympathize with Officer Gonzalez here. I sympathize with any officer who at a late hour or any time approaches a That's why the law builds in all sorts of mechanisms for the police to take advantage of. MNs, Moorfield, all that stuff. We don't even have to go over it, and even in the Rodriguez context, as I said in the beginning, this stop could have lasted an hour. There's no magic number here. If what in fact was happening was a pause or an extension of the stop because the circumstances and the DUI and the mission necessitated an extension for safety, no problem. Yeah, but your argument is also that had he said, I don't care if they shoot Cannon, I never liked him anyway, and he just kept talking, and he just kept talking about the DUI stuff long enough for Cannon to get him out of the car and frisk him, your argument goes away because the Rodriguez moment, there was no pause. That's the legal position, right? That's right, Your Honor, but it's not arbitrary. We look at cases as they unfold, and there's an important background principle here that the Supreme Court has started to articulate in Rodriguez, which is that's not what traffic stops are for. Officer Cannon dove into that truck, and I don't think- Yeah, but now you're ignoring Officer Gonzalez, but that's the position you've got to take, and I get it. And that's what we do in Fourth Amendment. We look at the totality of the circumstances. We look at everything. We don't divide and look at the subjective intent, and boy, Gonzalez was in a bad position. Cannon put both of them in a bad position. It was dangerous to get in that truck with two people he didn't really know anything about, and that's what happened here. We have a- We're all together on that, Mr. Spicer. Yeah, it really was. It really was dangerous. Thank you, Your Honors. I know you indulged some extra time on both of our behalf, so I think it's nice seeing you both. Nice way to tell us to shut up, Mr. Spicer. Okay. Mr. Newcomer, I don't think I've seen you before. It's really a pleasure. Very, very well-argued. Mr. Spicer, we always expect his best game. He always brings it, but as Judge Jordan said, he parried your argument very well, and you did really just very, very well. So hopefully, I'll see you again soon. You did a remarkably fine job, as Mr. Spicer did, but again, it's kind of patronizing, but we always get a fine job from Spicer. He's the public defender's Osmer. Yeah. Thanks so much, both of you. Thank you. Oh, can we get a transcript, Greg? Can we ask him and let the government pay for that? Sure. Sure, guys. Great. Thanks a lot. Okay.